IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)

| | |
|---|---|
| JAY NEDRY, et al. | ) |
|     Plaintiff, | ) |
| v. | ) Civil Action No.: 1:11-CV-878-LMB/IDD |
| GUNNAR NELSON, et al. | ) |
|     Defendant. | ) |

## DEFENDANT GUNNAR NELSON'S RULE 26(a)(3) DISCLOSURES

Defendant Gunnar Nelson, by counsel, in accordance with the Federal Rule of Civil Procedure 26 (a)(3) and Local Rules of Civil Procedure, hereby submits his witness and exhibit lists as follows:

### WITNESS LIST

1. Gunnar Nelson;
2. Matthew Nelson;
3. Obi Steinman;
4. Lauren Levanduski;
5. Kimberly Reed;
6. John Finberg – by de bene esse deposition;
7. Howie Simon - by de bene esse deposition.

For persons designated above as by deposition, Mr. Nelson will designate the portions of the transcript to be introduced a trial once the transcripts are received. Mr. Nelson reserves the right to call any witnesses listed or called by plaintiff and/or any witnesses necessary for impeachment or rebuttal.

1

**EXHIBIT LIST**

A. Signed Offer Sheet from Jay Nedry, sent via facsimile dated July 22, 2008;

B. Contract entered into between Jay Nedry and Nelson dated August 10, 2008;

C. Invoice dated September 28, 2010;

D. Letter from Deborah Wagnon, Esq. to William E .Crockett, Esq., dated September 27, 2010;

E. Road Report, dated September 18-21, 2008;

F. Cancelled check for $2,000.00, dated September 22, 2008;

G. Photographs of the interior of Jaxx, taken on the evening of September 19, 2008;

H. Article entitled "Gunnar Nelson discusses an unfortunate situation at Jaxx; Calls the club the lowpoint of his career," dated August 20, 2010 and published on www.examiner.com by Kimberly Reed;

I. Article entitled "Update on the situation between Jaxx and Gunnar Nelson," dated August 20, 2010 and published on www.examiner.com by Kimberly Reed.

J. E-mail from jaxxnews@aweber.com "On Behalf of Jaxx Night Club" to Kim Reed forwarding "The Latest Jay Page," dated August 20, 2010.

K. "Jay's Page – Nov 2010," dated November 26, 2010 and posted on www.jaxxroxx.com.

L. "Greetings!," dated June 14, 2011 and posted on www.jaxxroxx.com.

M. Transcript of Mr. Nedry's interview with People Who Hate People, dated in or about February 2011.

N. Audio recording of Mr. Nedry's interview with People Who Hate People, dated in or about February 2011.

O.  Mr. Nelson's Requests for Admission to Mr. Nedry, dated January 30, 2012, and Mr. Nedry's Responses to Mr. Nelson's Requests for Admissions, dated February 29, 2012 (redacted as to Mr. Nedry's untimely objections and as to any requests that are denied).

P.  Counsel for Mr. Nedry have indicated that Mr. Nedry would be producing additional documents responsive to Mr. Nelson's Requests for Production, i.e. beyond the mere five (5) pages of documents produced to date. However, as of the date of this filing, Mr. Nedry has not produced any additional documents. Mr. Nedry has also not yet complied with a subpoena to produce records and other documents belonging to Holt Enterprises, Inc. which pertain to Jaxx nightclub. Mr. Nelson reserves the right to use any document produced by Mr. Nedry subsequent to this filing which are responsive to either Mr. Nelson's discovery requests or the subpoena. Mr. Nelson further reserves the right to use any exhibit listed or used by plaintiff and/or any exhibit not listed for the purpose of impeachment or rebuttal.

### **DESIGNATIONS**

While reserving the right to call Mr. Nedry to testify live at trial, Mr. Nelson might use at trial all or part of the following portions of Mr. Nedry's deposition:

1.  Page 45, lines 18 through 21.
2.  Page 50, line 21 through page 51, line 2.
3.  Page 121, line 20 through page 122, line 17, & page 123, lines 1 through 17.
4.  Page 124, lines 1 through 4.
5.  Page 125, lines 9 through 11, & page 126, line 7.

6. Page 208, line 17 through page 210, line 5.

7. Page 213, line 20 through page 214, line 1.

8. Page 269, lines 4 through 10.

### **PROPOSED STIPULATIONS OF UNCONTESTED FACTS**[1]

1. Mr. Nedry sent an Offer Sheet to "Just Havin Fun/Nelson" on or about July 22, 2008 ("Offer Sheet").

2. The Offer Sheet offered Nelson $7500.00 plus back line plus 85% over $11,500.00 plus rider" to play a concert at Jaxx on September 19, 2008.

3. Mr. Nedry received a written contract in August 2008.

4. The terms of the written contract were for Nelson to headline a concert at Jaxx on September 19, 2008 in exchange for $7,500.00 "Plus 85% over $11,500 plus rider."

5. The written contract stated that a $3,750 deposit was due "immediately."

6. The written contract stated that the "[b]alance of $3,750.00 due Artist in cash upon request, prior to performance on day of engagement."

7. Mr. Nedry made no payments to Mr. Nelson or to the band Nelson prior to September 19, 2008.

8. On or about September 17, 2008, Mr. Nedry spoke with Obi Steinman on the telephone.

9. Mr. Nelson was provided with $2,000.00 in cash on September 19, 2008.

10. Mr. Nelson was provided with a check for $2,000.00 on September 19, 2008.

11. The check which was provided to Mr. Nelson on September 19, 2008 was dated September 22, 2008.

---

[1] Defense counsel sent these proposed stipulations to Mr. Nedry's counsel via e-mail on March 13, 2012, requesting that Mr. Nedry's counsel advise whether they agreed to these proposed stipulations. As of the time and date of this filing, Mr. Nedry's counsel has not responded to defense counsel's request.

12. Mr. Nedry did not pay $3,500.00 to Mr. Nelson after Nelson's September 19, 2008 performance.

13. Mr. Nedry has no writing or other documentation which supports his allegation that Obi Steinman agreed to reduce the written contract price.

14. Ms. Reed's article was removed from www.examiner.com on or about September 5, 2010.

15. From approximately September 5, 2010 through the present, it is not possible to access Ms. Reed's article on www.examiner.com.

16. Mr. Nedry cannot identify a single band or musician who has refused to play at Jaxx as a result of Ms. Reed's article.

17. Mr. Nedry cannot identify a single individual who holds him in less esteem as a result of Ms. Reed's article.

18. Mr. Nedry cannot identify a single individual who refused to patronize Jaxx as a result of Ms. Reed's article.

19. Mr. Nedry cannot identify any actual damages suffered as a result of Ms. Reed's article.

GUNNAR NELSON

By: /s/ Robert E. Draim
Counsel

David D. Hudgins, Esquire, VSB # 20602
Robert E. Draim, Esquire, VSB # 18635
Lynn M. Rovelli, Esquire, VSB # 80882
HUDGINS LAW FIRM P.C.
515 King Street, Suite 400
Alexandria, Virginia 22314
703.739.3300; 703.739.3700 fax

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed and served by e-mail and regular mail, first-class, postage prepaid this 14th day of March 2012 to:

Matthew S. McConnell, Esquire
6116 Rolling Road, Suite 209
Springfield, Virginia 22152

William B. Crockett, Esquire
Dion-Kindem & Crockett
21271 Burbank Boulevard, Suite 100
Woodland Hills, California 91367

                                            /s/ Robert E. Draim
David D. Hudgins, Esquire, VSB # 20602
Robert Draim, Esquire, VSB # 18635
Lynn M. Rovelli, Esquire, VSB # 80882
HUDGINS LAW FIRM P.C.
515 King Street, Suite 400
Alexandria, Virginia 22314
703.739.3300; 703.739.3700 fax